**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:20-cv-21043-XXXX

PETER J. NEARY, AS TRUSTEE OF THE
PETER NEARY REVOCABLE TRUST,

          Plaintiff,

   vs.

GLOBAL GOLD EXCHANGE, LLC; TOBIAS
HALLIN; JAMES WARREN; RICHARD M.
OWEN; JEFFREY MORROW,

          Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Peter J. Neary, as Trustee of The Peter Neary Revocable Trust, brings this action against Defendant Global Gold Exchange, LLC; Tobias Hallin; James Warren; Richard M. Owen; and Jeffrey Morrow for fraud, breach of contract, unjust enrichment, and negligent misrepresentation arising out of Defendants' conduct in procuring an approximately $3,000,000 loan from Plaintiff, and Defendants' failure to perform upon the promissory note relating to that loan.

In sum, Defendants represented themselves to Plaintiff as a legitimate business when in fact they were running a money laundering front. Through this lie, Defendants obtained a $3,000,000 loan from Plaintiff. They then defaulted on this loan.

As its Complaint, Plaintiff alleges as follows:

## THE PARTIES

1.     Peter J. Neary ("Neary") is an individual domiciled in Miami, Florida. Neary is Trustee of The Peter Neary Revocable Trust (the "Neary Trust"). The Neary Trust is an express trust formed under Florida law.

2.     Defendant Global Gold Exchange, LLC ("Global Gold Exchange" or the "Company") is a California limited liability company with its principal place of business in San Diego, California. Global Gold Exchange represents itself as a precious metals dealer.

3.     Defendant Tobias Hallin ("Hallin") is an individual who is domiciled in Hong Kong. Hallin represents himself as a managing member of Global Gold Exchange.

4.     Defendant James Warren ("Warren") is an individual who is domiciled in California. Warren represents himself as a managing member of Global Gold Exchange.

5.     Defendant Richard M. Owen ("Owen") is an individual who is domiciled in California. At all times relevant to this Complaint, Owen was a managing member of Global Gold Exchange and acted as the Company's compliance officer.

6.     Defendant Jeffrey Morrow ("Morrow") is an individual who is domiciled in California. At all times relevant to this Complaint, Morrow was a managing member of Global Gold Exchange.

7.     Upon information and belief, these individual defendants all acted in concert with one another and with Global Gold Exchange concerning the conduct at issue in this Complaint.

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because this case involves citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions underlying Plaintiff's claims occurred in this District.

10.     Specifically, Plaintiff's claims arise out of Defendants' conduct in procuring a loan from Plaintiff and Defendants' subsequent failure to perform upon the related promissory note.  All of the in-person meetings between Plaintiff and Defendants relating to the loan were held in the Southern District of Florida, both before and after the promissory note was executed.  Many of Defendants' misrepresentations and omissions to Plaintiff were made in this District, as well.

11.     Additionally, Plaintiff is a citizen of Florida, and the harm Plaintiff has suffered as a result of Defendants' conduct occurred in the Southern District of Florida.

## GENERAL ALLEGATIONS

12.     In or around November 2017, Peter J. Neary learned about a potential investment opportunity with Global Gold Exchange.  In December 2017 and January 2018, Neary and his son, Thomas, met with Hallin and Warren, as representatives of Defendants, in Miami, Florida, to learn more about the investment opportunity.

*Defendants' False Statements*

13.     During these meetings, Hallin and Warren (on Defendants' behalves) represented to Neary and his son Thomas that they were the principal managers and owners of Global Gold Exchange.  Hallin and Warren explained that, in summary, the Company's business structure involved purchasing gold from miners at a discount and then re-selling that gold to refineries.

14.     Hallin and Warren (on Defendants' behalves) further represented that Global Gold Exchange had been trading in precious metals since at least 2013, that the Company exported primarily from Ecuador and Ghana, and that the Company had "built up great trust and support with the local mining firms they deal with."   An email communication from Hallin reiterating these representations and others is attached as **Exhibit 1**.

15.     Hallin and Warren (on Defendants' behalves) provided information about Global Gold Exchange's performance history.   They also shared a comprehensive background report on the Company, which they represented had been commissioned by another large investor.   "[I]n short," Hallin expressed at the time, "we don't have any transaction risk."  (Ex. 1)

16.     However, these representations were false.  Defendants Hallin and Warren concealed from Plaintiff the reality that Defendants ran Global Gold Exchange as a money laundering front and recorded fictitious transactions to further this effort.  According to statements by Defendants Owen and Morrow (two of the company's managing members) during a contemporaneous undercover investigation into their crimes, these false transactions were designed to conceal drug proceeds for Mexican cartel interests.

Accordingly, contrary to Defendants' representations, the business presented severe "transaction risk."

17.     Notably, on August 2, 2019, Defendants Global Gold Exchange, Owen, and Morrow pleaded guilty in the United States District Court for the Southern District of California, Case No. 3:19-cr-2936-CAB, to Money Laundering, Operating an Unlicensed Money Transmitting Business, and Mail Fraud.

18.     Defendants Global Gold Exchange, Owen, and Morrow, pleaded guilty to an Information that charged them with engaging in false transactions for the purposes of money laundering.  Their charged conduct began as early as August 2017—four months before beginning discussions with Neary about the $3,000,000 loan.  This publicly filed Information is attached to this Complaint as **Exhibit 2.**

19.     Based on and in reliance upon Defendants' false representations, Neary, on behalf of the Neary Trust ("Plaintiff"), delivered to Defendants the sum of $3,000,000.

### *The Parties' Loan Agreement*

20.      Plaintiff made this $3,000,000 loan pursuant to a loan agreement with Global Gold Exchange entered on or about March 1, 2018 (the "Loan Agreement"). Pursuant to and as a condition of the Loan Agreement, Plaintiff and Global Gold Exchange simultaneously executed a promissory note (the "Promissory Note" or the "Note" and, together with the Loan Agreement, the "Loan Documents").  True and correct copies of the Loan Documents are attached as **Exhibit 3**.

21.     Defendants have failed to honor their obligations under the Loan Documents.

22.     As the "Lender" under the Loan Agreement, and as the "Holder" of the Promissory Note, Plaintiff agreed to lend a principal amount of $3,000,000 (the "Principal Amount") to Global Gold Exchange (the "Loan").  Plaintiff did in fact make this loan.

23.     In consideration of the Loan, Global Gold Exchange, as a sophisticated borrower, agreed to make monthly interest payments to Plaintiff at the rate of 24% of the Principal Amount per annum, and the Company agreed to pay the Principal Amount back to Plaintiff by March 1, 2019 (the "Maturity Date").  (Ex. 3, Promissory Note)

24.     Through the Loan Agreement, Plaintiff and Global Gold Exchange memorialized their understanding that the purpose of the loan was "to facilitate the execution of [the Company's] business plan," and as such the Company expressly represented and warranted that the Loan was to be used for "something other than personal, family, or household purposes."  (Ex. 3, Loan Agreement at § 3.6)

25.     Global Gold Exchange made several other representations and warranties in the Loan Agreement, as well, including representations and warranties as to the Company's solvency, knowledge of "pending or threatened" litigation or regulatory enforcement action, knowledge of circumstances that would constitute an Event of Default under the Agreement, and the accuracy and completeness of the information that had been provided to Plaintiff.  (Ex. 3, Loan Agreement at § 3)

26.     Global Gold Exchange's obligation of transparency was ongoing.  Under the Loan Agreement the Company was obligated to provide Plaintiff with prompt written notice of any occurrence constituting an Event of Default or a Material Adverse Effect, or in the event that any litigation or regulatory proceeding was "instituted or threatened to be instituted by or against" the Company.  (Ex. 3, Loan Agreement at § 4.1)

27.     The Loan Agreement defines "Event of Default" to include the following contingencies, among others:

(a) "Borrower shall fail to pay when due any principal, interest, fee or other amount required to be paid by the Borrower under or in connection with any Loan Document"; and

(b) "[A]ny representation or warranty made or deemed made by Borrower under or in connection with any Loan Document or any Financial Statement shall have been false or incorrect in any material respect when made or deemed made."

(Ex. 3, Loan Agreement at § 5)

28.     The Loan Agreement defines "Material Adverse Effect" as:

"[A]ny event, change, circumstance, effect or other matter that has, or could reasonably be expected to have . . . a material adverse effect on (a) the business, operations, results of operations, assets, liabilities, or financial condition of Borrower or (b) the ability of Borrower to perform any of its obligations under the Loan Documents."

29.     The Loan Agreement provides that upon the occurrence of any Event of Default, Plaintiff would be entitled to either "declare all Obligations to be immediately due and payable" or to "accelerate or extend the time of payment, compromise, issue credits, or bring suit on all accounts receivable" (Ex. 3, Loan Agreement at § 6.1(a)-(b))

30.     The Loan Agreement further provides that Global Gold Exchange "shall pay all costs incurred by Lender in collecting sums due under the Note after an Event of Default, including reasonable attorneys' fees." (Ex. 3, Loan Agreement at § 6.2)

### *Defendants' Breach*

31.     Global Gold Exchange is in breach of the Loan Documents and is responsible for occurrences that constitute Events of Default under the Loan Agreement. For, notwithstanding the Company's representation and warranty as to its solvency, the Company has defaulted on its payment obligations to Plaintiff under the Promissory Note.

32.     From April 2018 to December 2018, Global Gold Exchange made monthly interest payments to Plaintiff as they came due under the Note.  From that point forward, however, the Company failed to make any of the successive interest payments that were due through the Maturity Date.

33.     More significantly, Global Gold Exchange failed to pay the Principal Amount back to Plaintiff by the Maturity Date.  As of the date of the filing of this action, the Company has paid back a total of just $750,000 toward the Principal Amount.  The Company paid that amount over the course of five separate payments to Plaintiff between February 2019 and May 2019, but the Company has not made any additional payments since that time.

34.     Upon information and belief, Morrow was the principal responsible for remitting payments to Plaintiff on behalf of Global Gold Exchange, as Morrow's name (or other identifying information) appeared on the cashier's checks and wire transfer confirmations for those payments Plaintiff did receive from the Company.

35.     Global Gold Exchange's payments to date leave an outstanding and defaulted principal balance of $2,250,000 that is still owed to Plaintiff under the Promissory Note (the "Principal Balance"), an amount that does not include the unpaid interest that has accrued.

36.     Additionally, Defendants' admissions incumbent in their plea of guilty in *United States v. Global Gold Exchange LLC*, 3:19-cr-2936-CAB (S.D. Cal.) reveal additional Events of Default under the Loan Agreement. Notably, Defendants' admissions reveal as materially "false or incorrect . . . when made" the representations and warranties that Global Gold Exchange made as to the Company's knowledge of "pending or

threatened" litigation, knowledge of circumstances that would constitute an Event of Default, and the accuracy and completeness of the information that had been provided to Plaintiff.

37.     For example, the Information reveals that the Government had been conducting a criminal investigation into Global Gold Exchange from before the time Neary learned about the potential investment opportunity with the Company and entered into the Loan Agreement.  The Information also reveals that throughout that same period, the Company was laundering money, effectively and unlawfully operating as an unlicensed money transmitting business, and engaging in mail fraud by falsely reporting cash transactions as precious metal sales.  (Ex. 2, at ¶¶ 5–7)

38.     Moreover, as revealed in the Information, Owen, the compliance officer of Global Gold Exchange, had a criminal record, having been previously convicted of wire fraud before being hired by the Company.  The Company had been transacting with a "local cartel out of Mexico." And the Company had a practice of falsifying invoices and advising clients to mislead law enforcement and tax authorities.  (Ex. 2, at ¶¶ 2–3, 8–12)

### *Defendants' Continued Bogus Excuses for Nonpayment*

39.     Given Global Gold Exchange's default of its payment obligations and the other serious Events of Default and Material Adverse Effects, Plaintiff has attempted, unsuccessfully, to exercise its right to collect all outstanding amounts that are owed to Plaintiff under the Promissory Note.  But after making the payments totaling $750,000 between February 2019 and May 2019, the Company stopped making payments toward the Principal Amount.

40.     In the time since May 2019 through the present, Defendants, through Hallin and Warren, repeatedly represented to Neary—on a near monthly basis—that additional payments were imminent.  However, the promised payments fell through each time.  And each time they fell through, Defendants, through Hallin and Warren, would falsely blame the continued delays on a variety of external factors, including IRS issues, bank misunderstandings, and unexplained challenges in obtaining funds from overseas.  A composite exhibit of relevant communications between the parties and/or their representatives is attached as **Exhibit 4**.

41.     Even after the Information was filed in August 2019, Defendants, through Hallin, maintained that there was no reason for Neary to be concerned.  When Neary's son, Thomas, sent Hallin a contemporaneous news article about the charges that had been brought against Global Gold Exchange, Hallin falsely insisted in text messages to Thomas that the wrongdoing had been carried out by rogue actors and should not be imputed to the Company.  According to Hallin, the Company was still in business and had the financial wherewithal to make Plaintiff whole under the Loan Documents.  The referenced text messages are attached as **Exhibit 5**.

42.     Hallin also indicated that he had long known about the Government's investigation and the pending charges against Global Gold Exchange, because in the same text message to Thomas he conveyed that "[t]his plea was done [a] long time ago and they just been dragging it out for whatever . . . reason."  Despite knowing of these circumstances, however, Hallin had not disclosed any of this information to Plaintiff.

43.     Based upon these misrepresentations, Plaintiff has held off on litigation for some time.  Plaintiff put Defendants on formal notice that Global Gold Exchange was in default under the Promissory Note by no later than September 2019.

44.     Plaintiff is in imminent danger of irreparable injury because of the failure or inability of Global Gold Exchange to pay the outstanding amounts that are owed to Plaintiff under the Note.  Plaintiff's concerns are compounded by the ongoing uncertainty and the potential impact to the Company's business arising out of the criminal charges that are pending against the Company and its managing members and the corresponding forfeiture allegations.

45.     Therefore, Plaintiff has retained the undersigned counsel to enforce its rights and remedies under the Loan Documents and to assist in the collection of the outstanding amounts that are owed to Plaintiff.

## COUNT I – FRAUD
**(Against All Defendants)**

46.     Plaintiff restates and realleges paragraphs 1–45 as though fully stated herein.

47.     On or about November 2017 through March 2018, Defendants, through Hallin and Warren, made the representations discussed in Paragraphs 13–19 of this Complaint. Notably, Defendants represented to Plaintiff that the Company was a legitimate precious metals dealer and that the Loan from Plaintiff would be used "to facilitate the execution of [a] business plan" involving the simple purchasing and re-selling of gold. Defendants represented that there was no prospect of litigation or regulatory enforcement action against the Company. Defendants intended for Plaintiff to rely on these representations in extending a $3,000,000 loan to Defendants. And Plaintiff did so.

48.     Additionally, as alleged in Paragraph 15 of this Complaint, Defendants (through Hallin and Warren) caused to be presented to Plaintiff information about Global Gold Exchange's performance history and a comprehensive background report on the company purportedly produced by a large institutional investor.  Defendants vouched for and adopted the representations contained in this report.  Defendants intended Plaintiff to rely on this information and report in deciding whether to enter into the Loan Agreement and deliver Global Gold Exchange $3,000,000.  Plaintiff did so rely on these representations.

49.     In reality, however, Defendants knew this information to be false. Defendants knew they were running Global Gold Exchange as an illicit money laundering enterprise, engaging in mail frail, and running Global Gold Exchange as an unlicensed money transmitting business.  Had Defendants disclosed these true facts, Plaintiff would not have engaged in the transactions described in this Complaint and would not have delivered to Global Gold Exchange $3,000,000.

50.     To induce Plaintiff to enter into (and then to maintain) the Loan Documents, Defendants lied to Plaintiff about Global Gold Exchange's criminal activities and business associations.  Only after the Information was publicly filed in August 2019 did Hallin concede to Neary's son, Thomas, that the "plea was done [a] long time ago"—and even then it was only after Hallin was confronted with a news article about the criminal charges.

51.     Defendants' conduct benefited Defendants and has caused Plaintiff damages.  Plaintiff is therefore entitled to judgment against Defendants in an amount to be proven at trial.

52.     Accordingly, Plaintiff is entitled to relief as set forth in the Prayer for Relief below.

### COUNT II – BREACH OF CONTRACT
**(Against Defendant Global Gold Exchange)**

53.     Plaintiff restates and realleges Paragraphs 1–45 as though fully stated herein.

54.     The Loan Documents are based on adequate consideration and Plaintiff performed its own contractual obligations under those Documents.

55.     Global Gold Exchange breached its contractual obligations under the Loan Documents, however, by defaulting on its payment obligations to Plaintiff under the Promissory Note.  Specifically, the Company failed to make all required monthly interest payments to Plaintiff and failed to pay the Principal Amount back to Plaintiff by the Maturity Date.

56.     As of the date of the filing of this action, Global Gold Exchange has paid a total of just $750,000 toward the Principal Amount of $3,000,000, leaving an outstanding and defaulted Principal Balance of $2,250,000 that is still owed to Plaintiff, an amount that does not include the unpaid interest that has accrued.

57.     Global Gold Exchange has also breached its contractual obligations under the Loan Documents by making material false representations at the time the Loan Documents were signed, and by failing to provide Plaintiff with prompt written notice of the Company's criminal activities or the Government's investigation.  Those occurrences constituted Events of Default, Material Adverse Effects, and "proceedings" instituted against the Company within the meaning of the Loan Agreement.

58.     Global Gold Exchange's breaches have caused damage to Plaintiff and have caused Plaintiff to incur attorneys' fees and collection costs.  As such, Plaintiff is entitled to judgment against Global Gold Exchange for the outstanding amounts that are owed to Plaintiff under the Promissory Note, in addition to all reasonable attorneys' fees and collection costs incurred by Plaintiff.

59.     Accordingly, Plaintiff is entitled to relief as set forth in the Prayer for Relief below.

**COUNT III – BREACH OF CONTRACT**
**(Against Defendants Hallin, Warren, Morrow, and Owen**
**as Alter Egos of Defendant Global Gold Exchange)**

60.     Plaintiff restates and realleges Paragraphs 1–45 and 53–59 of this Complaint as though fully stated herein.

61.     The Loan Documents are based on adequate consideration and Plaintiff has performed its own contractual obligations under those Documents.

62.     Global Gold Exchange breached its contractual obligations under the Loan Documents by defaulting on its payment obligations to Plaintiff under the Promissory Note. Specifically, the Company failed to make all required monthly interest payments to Plaintiff and failed to pay the Principal Amount back to Plaintiff by the Maturity Date. Additionally, Global Gold Exchange breached its contract under the Loan Documents by making materially false representations to Plaintiff at the time the Loan Documents were executed, and failing to provide required notice to Plaintiff of Material Adverse Effects.

63.     Global Gold Exchange was used as a mere instrumentality by its members, Hallin, Warren, Owen, and Morrow.  Specifically, Hallin, Warren, Owen, and Morrow used the Company as a subterfuge for illegal transactions.

64.     On behalf of all Defendants, Hallin and Warren represented to Plaintiff that the Company was a legitimate precious metals dealer and that the Loan from Plaintiff would be used "to facilitate the execution of [a] business plan" involving the simple purchasing and re-selling of gold."   On that basis, Plaintiff entered into the Loan Documents with the Company.

65.     At the very time Hallin and Warren were making those representations to Plaintiff, however, Global Gold Exchange was engaged in mail fraud, and was laundering money through Global Gold Exchange's operation as an unlicensed money transmitting business.

66.     As managing members of the Company, Owen and Morrow would falsely report cash transactions as precious metal sales, even though they knew that the property involved in those transactions had been derived from unlawful activities.  After falsifying the transactions, Owen and Morrow would advise clients to similarly mislead law enforcement and tax authorities about the transactions.

67.     As charged in the Information, to which Global Gold Exchange, Owen, and Morrow have pleaded guilty and are awaiting sentencing, Owen and Morrow carried out these unlawful activities "while acting within the course and scope of their employment and agency and in part to benefit" the Company.

68.     Yet, both before and after the Loan Documents were executed, Hallin, Warren, Owen, and Morrow continually concealed from Plaintiff those unlawful activities. It was only after the Government's Information was publicly filed in August 2019 that Hallin conceded to Neary's son, Thomas, that the "plea was done [a] long time ago"—and

even then it was only after Hallin was confronted with a news article about the criminal charges.

69.     Defendants' unlawful conduct caused Plaintiff to execute the Promissory Note and is responsible for Global Gold Exchange's default under the Note.

70.     Plaintiff therefore is entitled to judgment against Hallin, Warren, Owen, and Morrow for the outstanding amounts that are owed to Plaintiff under the Promissory Note, in addition to all reasonable attorneys' fees and collection costs incurred by Plaintiff.

71.     Accordingly, Plaintiff is entitled to relief as set forth in the Prayer for Relief below.

**COUNT IV – UNJUST ENRICHMENT**
**(Against All Defendants)**
***IN THE ALTERNATIVE***

72.     Plaintiff restates and realleges paragraphs 1–45 as though fully stated herein.

73.     On or about March 2018, Plaintiff delivered to Defendant Global Gold Exchange $3,000,000. Upon information and belief, this money was distributed to the individual Defendants in this action as part of the fraudulent scheme described in Count I of this Complaint.

74.     As of the date of the filing of this action Defendants have returned $750,000 of this $3,000,000.

75.     Defendants have been unjustly enriched because they continue to retain the benefits of Plaintiff's unreturned $2,250,000.

76.     Injustice can only be avoided by ordering Defendants to disgorge the retained funds.

77.     Accordingly, Plaintiff is entitled to relief as set forth in the Prayer for Relief below.

### COUNT V – NEGLIGENT MISREPRESENTATION
**(Against Defendants Global Gold Exchange, Hallin, and Warren)**
*IN THE ALTERNATIVE*

78.     Plaintiff restates and realleges Paragraphs 1–45 of the Complaint as though fully stated herein.

79.     Hallin and Warren represented to Plaintiff that the Company was a legitimate precious metals dealer, and that the Loan from Plaintiff would be used "to facilitate the execution of [a] business plan" involving the simple purchasing and re-selling of gold.

80.     Hallin's and Warren's representations to Plaintiff were false at the time they were made.  It was unreasonable for Hallin and Warren to make the representations because, as the owners of Global Gold Exchange, they had no basis for believing the representations were true and should have known they were false.

81.     Indeed, at the very time Hallin and Warren were making those representations to Plaintiff, the Company was engaged in mail fraud, and was laundering money through the operation of an unlicensed money transmitting business.

82.     The unreasonableness of Hallin's and Warren's representations is further underscored by the Information, which reveals, for example, that Owen previously had been convicted of fraud at the time he was hired by Global Gold Exchange; that the Company had a business relationship with a Mexican cartel; and that the Company had a practice of falsifying invoices and advising clients to mislead law enforcement and tax authorities.

83.     Hallin's and Warren's false representations were made to Plaintiff in order to induce Plaintiff to enter into (and then to maintain) the Loan Documents.

84.     Plaintiff justifiably relied upon Hallin's and Warren's false representations, in ignorance of their falsity, and entered into the Loan Documents.  If Plaintiff had known about Global Gold Exchange's criminal activities, the Company's business associations, or the Government's investigation into the Company, Plaintiff would not have entered into the Loan Documents at all, and if Plaintiff already had done so Plaintiff would have recalled the Loan immediately.

85.     Hallin's and Warren's conduct benefited Defendants and has caused Plaintiff damages.   Plaintiff is therefore entitled to judgment against Global Gold Exchange, Hallin, and Warren for damages in an amount to be proven at trial.

86.     Accordingly, Plaintiff is entitled to relief as set forth in the Prayer for Relief below.

## **DEMAND FOR JURY TRIAL**

87.     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury for all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief against Defendants as follows:

A.      For judgment in its favor and for an award of actual, consequential, statutory, and punitive damages against Defendants, together with pre- and post-judgment interest.

B.      For the appointment of a receiver to preserve and manage Global Gold Exchange, LLC and its assets, which relief is to be specifically sought and supported by Plaintiff at the appropriate time in this action;

C.      For reasonable attorneys' fees;

D.      For the costs of bringing this action and other collection costs;

E.      For all other further relief that this Court deems just and proper.

Dated: March 9, 2020

Respectfully submitted,

MARCUS NEIMAN RASHBAUM
& PINEIRO LLP
/s/Jeffrey A. Neiman
Jeffrey A. Neiman
Florida Bar No. 544469
jneiman@mnrlawfirm.com
Derick R. Vollrath
dvollrath@mnrlawfirm.com
Florida Bar No. 126740
Jason L. Mays
Florida Bar No. 106495
jmays@mnrlawfirm.com

One Financial Plaza
100 SE Third Ave., Suite 805
Ft. Lauderdale, Florida 33394
Telephone:  954-464-1200
Facsimile:  866-780-8355