UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 20-21043-Civ-WILLIAMS/REID

PETER J. NEARY, as Trustee of the
Peter Neary Revocable Trust,

  Plaintiff,

v.

GLOBAL GOLD EXCHANGE, LLC,
TOBIAS HALLIN, JAMES WARREN,
RICHARD M. OWEN, and JEFFREY
MORROW,

  Defendants.
_____/

<u>Report and Recommendation Regarding Plaintiff's Amended Omnibus Motion for Final Default Judgment</u>

## FACTUAL BACKGROUND

Plaintiff, Peter J. Neary ("Neary"), is the trustee of "The Peter Neary Revocable Trust" ("Neary Trust"). [ECF No. 1 at 2]. The Neary Trust is formed under Florida Law. *Id*. Plaintiff filed suit on behalf of Neary Trust against Global Gold Exchange LLC ("Global") and its four managing members; Tobias Hallin ("Hallin"), James Warren ("Warren"), Richard M. Owen ("Owen"), and Jeffrey Morrow ("Morrow") alleging fraud, breach of contract, alter ego liability, unjust enrichment, and negligent misrepresentation. *Id*. at 11, 13, 14, 16, 17.

As background, in December 2017 and January 2018, Neary and his son met with Hallin and Warren to discuss an investment opportunity. *Id*. at 3. During these meetings, Hallin and Warren claimed Global purchased gold from miners at a discount and sold the gold to refineries at a profit. *Id*. at 4. Hallin stated that the company's business model did not present any transaction

risk. *Id*. In reality, Defendants ran Global as a money laundering front for the Mexican Cartel and recorded fictitious transactions to further this effort. *Id*. Plaintiff noted that Global, Owen, and Morrow have since pleaded guilty to Money Laundering, Operating an Unlicensed Money Transmitting Business, and Mail Fraud in the Southern District of California. *See id*. at 5; *see also* Case No. 3:19-cr-2936-CAB.

In 2018, however, unaware that Defendants' representations regarding their business model was false, Plaintiff agreed to lend money to Global. [ECF No. 1 at 5]. Under the loan agreement, Plaintiff agreed to lend a principal amount of $3,000,000 and in return, Global would pay a 24% interest rate on the principal amount per annum. *Id*. at 6. The agreement required Global to make monthly interest payments and repay the principal by March 1, 2019 ("the maturity date"). *Id*.

On March 1, 2018, Plaintiff in fact made the $3,000,000 loan to Global. *Id*. at 5. From April 2018 to December 2018, Global performed as promised making monthly interest payments of $60,000 to Plaintiff as they came due under the note. *Id*. at 8; *see also* [ECF No. 81-2 at 6]. However, Global missed the interest payment that was due in the beginning of January 2019. *Id*. Global's next payment was on February 6, 2019, where the company paid Plaintiff $250,000. *Id*. On March 1, 2019, payment of the principal became due. *Id*. After failing to pay the principal upon the maturity date of the loan, Global attempted to cure its default by making a series of payments to Plaintiff over the next two months, consisting of a $100,000 payment on April 12, a $100,000 payment on May 9, and two separate $150,000 payments on May 10 and May 17. *Id*. Global paid Plaintiff a total of $500,000 after the maturity date of the loan. *Id*. Global made no further payments. *Id*. As a result, in March 2020, Plaintiff filed this lawsuit.

## LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. The entry of a default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend . . . and that fact is made to appear by affidavit or otherwise." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316 (11th Cir. 2002) (quoting Fed. R. Civ. P. 55(a)). "[E]ntry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered, with the standard for 'a sufficient basis' for the judgment being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Singleton v. Dean*, 611 F. App'x 671, 671 (11th Cir. 2015) (quoting *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015)).

As result, before entering a default judgment, a court must determine "whether the allegations in the complaint (which are taken as true due to the default) state a substantive cause of action and provide a sufficient basis for the particular relief sought." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs. Inc.*, No. 21-cv-23623, 2022 U.S. Dist. LEXIS 205546, at *5-6 (S.D. Fla. Nov. 10, 2022) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)).

Once the Court finds that a plaintiff has established a sufficient basis for liability, the Court must then conduct an inquiry to ascertain the appropriate damages. See *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citation omitted). "Although an evidentiary hearing is generally required, the Court need not conduct such a hearing 'when . . . additional evidence would be truly unnecessary to a fully informed determination of damages.'" *Gov't Emps. Ins. Co.*, No. 21-cv-23623, 2022 U.S. Dist. LEXIS 205546, at *6 (quoting *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 F. App'x 737, 746 (11th Cir. 2017)). An evidentiary

hearing is not required when the record adequately supports an informed determination of damages. See *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

### A. The Complaint Sufficiently Pled a Plausible Claim for Relief as to all Five Counts

The Complaint asserts five claims for relief: (1) fraud (against all of the Defendants); (2) negligent misrepresentation (against the Company, Hallin, and Warren); (3) breach of contract (against the Company); (4) breach of contract (against all of the individual defendants, based on an alter ego theory of liability); and (5) unjust enrichment (against all of the Defendants). The five causes of action against Defendants can be separated into tort claims and contract claims: Counts 1 and 5, which allege fraud and negligent misrepresentation, and Counts 2, 3, and 4, which allege breach of contract, alter ego liability, and unjust enrichment.

The Court must first consider the applicable law for Plaintiff's claims. The loan agreement contains a choice of law clause that states that California law governs the contract. *See* [ECF No. 81-1 at 32]. Thus, California law applies to Plaintiff's contract claims. However, the applicable law is tricky for Plaintiff's tort claims. "In determining whether a choice of law clause contained in a contract between two parties also governs tort claims between those parties, a court must first examine the scope of the provision." *Cooper v. Meridian Yachts*, Ltd., 575 F.3d 1151, 1162 (11th Cir. 2009). Moreover, "[a] choice of law provision that relates only to the agreement will not encompass related tort claims." *Id*. Here, the choice of law clause states that "[t]he validity, enforcement and interpretation of this Agreement shall be governed and construed in accordance with the laws of the State of California." [ECF No. 81-1 at 32]. The choice of law clause only applies to claims arising from the agreement itself. Moreover, Plaintiff's tort claims—fraud and negligent misrepresentation—arose from Defendants' conduct outside the agreement. The Complaint alleges that Defendants contacted Plaintiff and induced a loan from Plaintiff under the

guise that Global was a legitimate precious metals dealer. Thus, Florida law governs Plaintiff's tort claims.

      i. *The Complaint Sufficiently Alleges Plaintiff's Tort Claims*

Plaintiff's tort claims implicate heightened pleading requirements. Count 1 alleges fraud and Count 5 alleges negligent misrepresentation. Federal Rule of Civil Procedure 9(b) creates a heightened pleading standard for claims of fraud. Fed R. Civ. P. 9(b) states that "a party must state with particularity the circumstances constituting fraud." As to count 5, courts have found that negligent misrepresentation claims "sound in fraud" and therefore require heightened pleading standards. *See Lamm v. State St. Bank and Trust*, 749 F.3d 938, 951 (11th Cir. 2014) (citing *Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir. 1993)); *see also Chiron Recovery Ctr., Ltd. Liab. Co. v. AmeriHealth HMO of N.J., Inc.*, No. 9:16-CV-82043, 2017 U.S. Dist. LEXIS 163487, at *7 (S.D. Fla. Oct. 3, 2017). Consequently, Counts 1 and 5 must pass the heightened pleading standard.

The Fed R. Civ. P. 9(b) standard requires pleading: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271, 2015 WL 5118122, at *4 (S.D. Fla. Sept. 1, 2015) (quoting *McGee v. JP Morgan Chase Bank, NA*, 520 F. App'x 829, 831 (11th Cir. 2013)). These requirements ensure that defendants have notice of the allegedly fraudulent conduct. *Id*.

Count 1 specifically asserts a fraud claim against all five Defendants for fraudulently inducing the Trust to initiate a loan to Global and for fraudulently concealing Global's illegal

5

money laundering scheme. [ECF No. 1 at 11]. Under Florida law, a Plaintiff must show four elements for a fraudulent misrepresentation claim: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (quoting *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985).

The Complaint sufficiently alleges fraudulent misrepresentation. In November 2017, Defendants Hallin and Warren, acting as representatives for Global, contacted Plaintiff to discuss an investment opportunity. [ECF No. 1 at 3]. During the discussions, Hallin and Warren falsely asserted that Global's business structure entailed purchasing gold from miners and reselling the gold to refineries. *Id*. at 4. Hallin and Warren also gave Plaintiff documents regarding Global's performance history, which contained fictitious transactions. *Id*. at 4. The documents were given to Plaintiff to demonstrate that Global was unlikely to default on a loan. Hallin further stated in an email "in short we don't have any transaction risk." [ECF No. 1-7 at 3]. These false representations were material and were made to induce Plaintiff to lend Global $3,000,000. [ECF No. 1 at 5].

Defendants also knew the representations were false. Global (the company), Owen, and Morrow pleaded guilty to engaging in false transactions for the purpose of money laundering. *Id*. at 5. The Information charged them with conduct that began four months before Defendants approached Neary for a loan. *Id*. at 5. Furthermore, the misrepresentations injured Plaintiff when Global failed to repay the entire principal for the loan and any interest that accrued.

Count 5 alleges negligent misrepresentation against Global, Hallin and Warren. [ECF No. 1 at 17]. "The elements of a claim for fraud in the inducement are identical to the elements of a claim for negligent misrepresentation, differing only by the underlying facts supporting each

claim." *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1308 (M.D. Fla. 2010) (citing *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 742 (11th Cir. 1995). The only difference between the two claims is the state-of-mind required to prove liability. *See Fojtasek v. NCL (Bahamas) Ltd.*, 613 F. Supp. 2d 1351, 1355 (S.D. Fla. 2009). In a negligent misrepresentation claim, the representor must make the misrepresentation "without knowledge as to its truth or falsity or under circumstances in which he ought to have known of its falsity . . . ." *Id*.

Here, Plaintiff's negligent misrepresentation claim is based on the same misrepresentations as Plaintiff's fraud claim. *See* [ECF No. 1 at 17, 18]. As to the state of mind, the Complaint alleges that Global "had a practice of falsifying invoices and advising clients to mislead law enforcement and tax authorities." *Id*. at 17. Additionally, one of Global's managing members, Richard Owen, was previously convicted for fraud. *Id*. These allegations sufficiently demonstrate that Defendants Hallin and Warren ought to have known of the falsity of its representations to Plaintiff.

II.   *The Complaint Sufficiently Alleges Plaintiff's Contract Claims*

Count 2 alleges a claim against Global for breach of contract based on the company's breach of the monetary and non-monetary terms of the loan agreement. Under California law, a breach of contract claim has four elements: "(1) the existence of the contract, (2) [the] plaintiff's performance or excuse for nonperformance, (3) [the] defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011).

Here, the complaint sufficiently alleges the elements for the breach of contract claim against Global. Plaintiff and Global entered into a loan agreement on March 1, 2018. [ECF No. 1 at 5]; see also [ECF No. 1-9 at 2] (attached loan agreement). Plaintiff performed by delivering $3,000,000 to Global pursuant to the loan agreement. [ECF No. 1 at 5]. Global's actions constituted

a breach when Global failed to make all required pre-maturity interest payments and when Global failed to repay the entire Principal amount by the maturity date. *Id.* at 8.

Global's breach is further supported by the terms of the loan agreement. The loan agreement defines "Event of Default" to include non-payment of interest or principle on the date due. *Id.* at 7. Moreover, the loan agreement provides that if an Event of Default occurs, Plaintiff is entitled to either "declare all Obligations to be immediately due and payable" or to "accelerate or extend the time of payment, compromise, issue credits, or bring suit on all accounts receivable." Id.; see also [ECF No. 1-9 at 7]. Thus, Global breached when Global failed to make timely interest payments and when Global failed to pay the outstanding principal by the maturity date. Global's breach also required Plaintiff to incur damages in the form of attorney's fees and collection costs. [ECF No. 1 at 14]. The agreement further provides that "Borrower shall pay all costs incurred by Lender in collecting sums due under the Note after an Event of Default, including reasonable attorneys' fees." [*Id.*].

Count 3 alleges a breach of contract claim against Hallin, Warren, Morrow and Owen as alter egos of Global. Id. Plaintiff alleges that the individual Defendants used Global as a mere instrumentality and that Global was used as a subterfuge for illegal transactions. *Id*. California's alter ego doctrine allows courts to "ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). The purpose behind the alter ego doctrine is to "prevent[] individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds." *Id.* However, there is a "presumption in favor of respecting

8

the corporate entity [because] disregarding a corporate entity is recognized as an extreme remedy. . . ." *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995).

To invoke alter ego liability, a plaintiff must show: (1) a unity of interest between the individual and the corporation, and (2) that not piercing the corporate veil would create an inequitable result. Id. In determining whether to apply alter ego liability, courts consider several factors, including the use of an entity "as a mere shell or conduit for the affairs of the other, . . . inadequate capitalization[,] [and a] disregard of corporate formalities . . . ." *Id.* (citing *Tomaselli v. Transamerica Ins*. Co., 25 Cal. App. 4th 1269, 1285 (1994)). In addition, "courts must look at all the circumstances to determine whether the doctrine should be applied." *Sonora*, 83 Cal. App. 4th at 539.

Here, the Complaint alleges sufficient facts to warrant alter ego liability against Defendants Hallin, Warren, Morrow, and Owen. The Complaint alleges that the individual Defendants created Global to launder money for the Mexican cartel and to fraudulently induce loans from Plaintiff and others. [ECF No. 1 at 15]. In support, the Complaint alleges that Global, Morrow, and Owen signed plea agreements, where they admitted that Global operated as a money laundering front. *Id.* at 5. This allegation demonstrates the unified interest between Global and the individual defendants to launder money for the Mexican cartel. The Complaint also alleges that Defendants fraudulently obtained a loan from Plaintiff. *Id.* at 4, 5. Defendants recorded fictitious transactions to conceal drug proceeds for the Mexican cartel and used the fictitious transactions to induce a loan from Plaintiff. *Id.* Based on these allegations, it would be inequitable to adhere to corporate formalities and allow the individual defendants to hide behind Global to avoid liability.

Count 4 alleges an unjust enrichment against all Defendants as an alternative claim to Plaintiff's breach of contract claims. "Under California law, the elements of unjust enrichment are:

(1) the receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another." *Shum v. Intel Corp.*, 630 F. Supp. 2d 1063, 1073 (N.D. Cal. 2009), *aff'd*, 633 F.3d 1067 (Fed. Cir. 2010). The Complaint alleges that Defendant received a benefit from Plaintiff's $3,000,000 loan but were unjustly enriched because Defendants only returned $750,000 to Plaintiff. [ECF No. 1 at 16]. As a result, Defendants were unjustly enriched by $2,250,000. *Id.* These allegations are sufficient for Plaintiff's unjust enrichment claim.

Finally, with respect to Count 5, we return to Florida and its elements for negligent misrepresentation. A plaintiff can succeed with their negligent misrepresentation claim by showing:

> (1) a misrepresentation of material fact that the defendant believed to be true but which was in fact false; (2) that defendant should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4) the plaintiff acted in justifiable reliance upon the misrepresentation, resulting in injury.

*Arlington Pebble Creek, LLC v. Campus Edge Condo. Ass'n, Inc.*, 232 So. 3d 502, 505 (Fla. 1st DCA 2017); *see also Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1503 (11th Cir. 1993) (applying Florida law to appellant's negligent misrepresentation claim).

After combining the facts in this motion with Florida negligence law, Plaintiff has indeed made a viable claim for negligent misrepresentation. Defendants represented to Plaintiff that Global specialized in precious metals, and any money loaned "facilitate[d] the execution of [a] business plan" in the gold trade. *See* [ECF 1 at 19]. Defendants knew this to be untrue. *Id.* Then Defendants intended to induce Plaintiff to rely on this misrepresentation with promises of "monthly interest payments . . . at the rate of 24% of the Principal Amount per annum." *Id.* at 6. Plaintiff loaned Global money from his Trust with the expectation of profit. *See id.* at 8. This Plaintiff incurred monetary damages. *See id.*; [ECF No. 97 at 6].

10

In sum, Plaintiff's pleadings sufficiently allege his tort and contract claims against Defendants.

### B. Defendants Owe Plaintiff Liquated Damages and Attorneys' Fees

The final issue for this Court concerns Plaintiff's requested sum for damages. Plaintiff feels this case warrants liquidated damages, attorneys' fees, and any other relief this Court deems necessary. *See* [ECF No. 97 at 27–34]. We must again turn to California law to make sense of Plaintiff's total damages. *See* [ECF No. 81-1 at 32].

i.  *Plaintiff Sufficiently Alleges Liquidated Damages*

Plaintiff asks for $4,922,239.30 in liquated damages. *See* [ECF No. 97 at 27]. He based this total on a signed loan document between the parties expressing an annual 24% interest rate on his loan: Plaintiff's $2,994,500 deposit in March 2018 and the accrued interest until this 2020 suit. *See id.*; [ECF No. 1-9 at 10].

On March 31, 2023, Certified Public Accountant Steven F. Klein stated a declaration calculating Plaintiff's liquidated damaged total. *See* [ECF No. 81-2 at 2]. There, Mr. Klein calculated two "scenarios" depending on whether five loan payments — $750,000 — between February 2019 and May 2019 "applied first to unpaid interest, or whether they were applied only to principal." [*Id.* at 1–2]. "Scenario 1" allocated the five payments to "unpaid interest before being applied to the outside principal" until March 31, 2023. [*Id.* at 2]. This calculation totaled $4,933,239.30. *See id.*

"Scenario 2" applied those same five payments but diverted the total away from unpaid interest to only the outstanding principal. *See id.* Mr. Klein's new total amounted to $4,650,712.36. *See id.*

California's Constitution prohibits a monetary loan used "primarily for personal, family, or household purposes . . ." from exceeding 10% per annum. *See* Cal. Const. art. XV, § 1. California's Corporation Code, however, provides an exception for a higher annual percentage that deals with "certain commercial loans" made by experienced buyers. *See* Cal. Corp. Code § 25118 (West); *Raceway Properties, LLC v. LSOF Carlsbad Land L.P.*, 157 F. App'x 959, 961 (9th Cir. 2005) (holding the district court did not err when finding exception applies because appellant "had been in the business of real estate development for several years and had a history of stable relationships with its funding sources, which indicates that it should have sufficient financial experience . . .") (internal quotation marks omitted).

The code continues that "[a]ny one or more evidences of indebtedness, and the purchasers or holders thereof, shall be exempt from the usury provisions of the California Constitution if . . . evidences of indebtedness aggregate at the time of issuance at least three hundred thousand dollars ($300,000) in original face amount . . . ." *Id.* § 25118(b)(1).

Once a plaintiff can show their indebtedness aggregates to at least $300,000, they must then show "[t]he lender and the issuer . . . by reason of their own business and financial experience or that of their professional advisers, could reasonably be assumed to have the capacity to protect their own interests in connection with the transaction." *Id.* § 25118(f)(2).

So, this Court sees three prongs needed to satisfy this exception. First, the loan must be for more than $300,000. Second, the loan should be relevant to business dealings and not personal or household matters. Third, there must be some level of sophistication between the lender and borrower. The level of sophistication can be sought out through the complexity of the business and the experience of the parties or previous dealings. Here, the exception in § 25118(f)(2) applies. Plaintiff's Trust loaned Global over $300,000. *See* [ECF No. 97 at 4]. The loan did not concern

the "personal, family, or household" that California's Constitution forbids from exceeding 10% per annual interest. *See* Cal. Const. art. XV, § 1. Lastly, Defendants' fictitious business model required a high amount of wherewithal that they could "reasonably . . . assume[] to have the capacity [needed] to protect their own interests . . . ." § 25118(f)(2). In other words, they were sophisticated enough to veil themselves with a legitimate business model that would solicit a businessperson into mistakenly loaning money to the Mexican Cartel. *See* [ECF No. 1-9 at 2] ("Borrower, a licensed commodity trader, wishes to arrange a loan to facilitate execution of the Borrower's business plan as it specifically relates to the purchase of gold in doré form and other commodities"); *Raceway Properties*, 157 F. App'x at 961.

Considering that Plaintiff's liquated damages is within a range supported by Klein's calculations, and the warrant California's Corporation Code exception, Plaintiff is entitled to liquated damages totaling of $4,933,239.30.

## ii. *Plaintiff Requests Reasonable Attorneys' Fee*

Under California law, as the prevailing party, Plaintiffs are entitled to reasonable attorneys' fees under the contract with Defendants. *See, Pac. Fuel Co,. LLC v. Shell Oil Co.*, 416 F. App'x 607, 609 (9th Cir. 2011). Under the "lodestar" method, a reasonable attorney's fee award is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *ACLU v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1994)). Under certain circumstances, the lodestar may be adjusted to reach a more appropriate attorneys' fee. *See Blum*, 465 U.S. at 888. Here, Plaintiff's counsel included a declaration detailing the firm's billing and hours devoted to this case. *See generally* [ECF No. 81-3]. Hourly fees ranged from $400 to $600 per hour for 312 hours, equaling $152,195. *Id.* at 2.

### A. Reasonable Hourly Rate

A reasonable hourly rate is to be measured by "prevailing market rates in the relevant community." *Blum*, 465 U.S. at 895. In determining this, the Court should consider the rate "for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Blum*, 465 U.S. at 895-96 n.11).

To determine reasonable hourly rates, a court may consider certain factors, including "the attorney's customary fee, the skill required to perform the legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). Here the hourly rate requested by the attorneys, between $400 for an associate and $600 for a partner in the law firm are within the customary amounts charged by lawyers in this district and are reasonable for the skill required to perform the legal services for this case. All of the attorneys were highly qualified and experienced in this area of law.

### B. Reasonable Number of Hours Expended

The Court must also evaluate Plaintiff's requested fees for reasonableness in terms of the total hours expended by counsel and the paralegals. *See Norman*, 836 F.2d at 1303. The burden rests on the plaintiff to submit a request for fees that will enable the court to determine what time was reasonably expended. *See Loranger v. Stierheim*, 10 F.3d 776, 782 (11th Cir. 1994). Counsel has included time records in its March 31 motion for final judgment which the Court will use to evaluate the reasonableness of the hours expended. [ECF No. 81-3].

When ascertaining the number of reasonable hours, a court must deduct "excessive, redundant or otherwise unnecessary hours" from those claimed. *See Norman*, 836 F.2d at 1303. The Court can either evaluate counsel's time records by applying an hour-by-hour analysis or can make an across-the-board cut. *See Bivins v. Wrap it Up, Inc.,* 548 F.3d 1348, 1350 (11th Cir. 2008). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Plaintiff explains that its billing records reflect time "primarily investigating the facts of the case, analyzing the loan documents and other client materials, researching potential causes of action, drafting the Complaint, attempting to effect service on Defendants, preparing and attempting to confer with Defendants about the case and "repeatedly seeking clerk's defaults." [*Id*. at 2]. Indeed, Plaintiff sued not only Global but also the four individuals involved in the fraudulent misrepresentations and breach of contract claims. Plaintiff also explained the difficulties in serving Defendants which resulted in a negotiated agreement to set aside the Defendants' initial default, followed by a second default by Defendants' Global, Hallin, Owen, and Morrow, Global's third default and Warren's more recent default as well. [ECF No. 97 at 11-16].

Plaintiff included in the fee request hours spent drafting and submitting a Victim Impact Statement for the use of the court in the criminal proceedings against the Defendants, communicating with the U.S. Attorney's Office regarding Plaintiff's experiences with Defendant's criminal scheme, and substantiating Plaintiff's entitlement to restitution in the criminal case. Plaintiff has not provided any authority to support his request for fees incurred in connection with the criminal case. The contract provides only for "costs incurred by the lender in collecting sums due under the Note after an Event of Default, including reasonable attorneys' fees." [ECF No. 81-1 at 14]. It is not clear that fees incurred in the course of the criminal prosecution of Defendants

15

are contemplated in the costs to collect the contractual amount due or to collect on Plaintiff's claims for fraudulent misrepresentations and other related tort claims. Aside from correspondence and discussions regarding the criminal prosecution, which seem appropriate to this collection action, Plaintiff's attorneys expended approximately 22 hours drafting and revising Plaintiff's Victim Impact Statement in the criminal case. Notably, courts considering restitution in criminal cases have distinguished between the costs recoverable in a civil actions and compensable losses included in a restitution award. *See, e.g., United States v. Havens*, 424 F.3d 535, 538 (7th Cir. 2005) ("damages and costs in a civil action, such as treble damages, consequential damages and attorneys' fees spent in pursuing litigation against the wrongdoer, do not qualify as 'losses' under the MVRA [the Mandatory Victim Restitution Act of 1996, 18 U.S.C. § 3663A]"). These statements are mainly to assist the court in a criminal case in determining an appropriate sentence and the appropriate amount of restitution based on both the emotional and financial losses the victim incurred, distinct from damages owed in a civil action. As such, the attorney hours expended for this purpose are not clearly related to the civil cause of action. These hours, at the average hourly rate of $500 per hour should be excluded.

For the reason above, the Court recommends granting Plaintiff attorneys' fees totaling $141,195, consisting of the amount of $152,195, less $11,000 which was expended on matters related to the criminal case against Defendants.

## CONCLUSION

For the foregoing reasons, and pursuant to Rule 58(a) of the Federal Rules of Civil Procedure, it is **RECOMMENDED** that Plaintiff's Motion for Default Judgment [ECF No. 81] be **ENTERED** and Plaintiff's Amended Omnibus Motion for Final Default Judgment be **GRANTED**, as follows:

1. Judgment is entered in favor of Plaintiff and against Global Gold Exchange, LLC (Counts I, II, IV, and V); Tobias Hallin (Counts I, III, IV, and V); James Warren (Counts I, III, IV, and V); Richard M. Owen (Counts I, III, and IV); and Jeffrey Morrow (Counts I, III, and IV).

2. Plaintiff shall recover from the Defaulted Defendants in the amount of $5,074,434.90, which is comprised of (i) $4,933,239.90 in liquidated damages, including the defaulted principal balance and interest due under the Loan Documents (as defined in the Motion), and (ii) $141,195 in attorney's fees.

3. The Final Default Judgment shall bear interest at the statutory interest rate until paid in full.

4. The Defaulted Defendants are jointly and severally liable for all amounts due under this Final Default Judgment.

Objections to this Report may be filed with the district judge within **FOURTEEN** (14) days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 9th day of February, 2024.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

**cc: All Counsel of Record**

18